[Nos. 43194, 43195.    En Banc.    January 10, 1975.]

THE STATE OF WASHINGTON, *Petitioner,* v. PHILIP LYNN
MANLY et al, *Respondents.*

*Robert F. Patrick, Prosecuting Attorney,* and *Wm. Don Parkinson, Deputy,* for petitioner.

*Wesley A. Nuxoll* (of *Savage, Nuxoll & McBride*), for respondent McIntire.

*Charles O. Shoemaker, Jr.* (of *Aitken, Schauble, Shoemaker & Neill*), for respondent Manly.

STAFFORD, J.—This is the review of superior court orders suppressing evidence obtained by a district court search warrant. The cases present identical issues and have been consolidated for the purpose of review.

Defendants Philip Manly and William McIntire occupied a second-floor apartment in Pullman, Washington. On May 14, 1973, a Washington State University police officer reported to Mr. Barry Clift, a detective with the Whitman

County Drug Control Unit attached to the Whitman County Sheriff's Office. The officer stated he had seen a plant, he thought was marijuana, growing in defendants' window. Thereafter Mr. Clift drove by defendants' apartment twice, observing nothing in the window. Upon being told this, the University police officer told Clift he should wash his glasses and take another look.

A day or so later Mr. Clift returned to the general area and parked his automobile in a parking lot across the street from defendants' apartment building. From that position he observed some vegetation that resembled marijuana plants in the window of defendants' apartment. To confirm his observation he looked at the plants again through his binoculars and testified "it was evident that it was marijuana to me." He then got out of his vehicle, walked across the street and stood on the public sidewalk below the window. At that point he was within 40 to 50 feet of the plants. He again observed the plants with his binoculars and noted the several plants definitely were marijuana.

On May 16, 1973, Clift sought a search warrant for defendants' apartment. The supporting affidavit stated in part:

> On Tuesday, May 15, 1973, the affiant was in the neighborhood of the above-described defendant and personally observed several marijuana plants in the window of the defendant growing in small containers.

The affidavit neither stated that binoculars had been employed by the affiant nor could Mr. Clift recall having mentioned this fact to the District Judge who issued the search warrant. Pursuant to the search warrant Clift searched defendants' apartment and seized a number of marijuana plants and related paraphernalia.

In granting defendants' motions to suppress the evidence, the trial court found, in part, that without the use of binoculars Clift would have been unable to identify the plants as marijuana with reasonable certainty; that the evidence did not disclose whether the plants were on the window sill or at some other location within defendants' room where

they could be seen through the window; that Clift's affidavit and testimony given in support of the search warrant did not disclose his use of binoculars to identify the plants; that without the use of binoculars Clift lacked sufficient reason to justify issuance of the search warrant; and that defendants did not knowingly expose the marijuana plants to public view and had a reasonable expectation of privacy regarding them. The trial judge ruled orally in Mr. Manly's case (consolidated herein with McIntire for appeal) that, in light of *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), the use of binoculars invaded defendant's reasonable expectation of privacy and violated his Fourth Amendment rights.

The State contends that under the circumstances herein, defendants had no reasonable expectation of privacy and that the use of binoculars did not amount to an illegal search prohibited by the Fourth Amendment. We agree.

█ The use of binoculars has been approved, at least inferentially, by the United States Supreme Court. *Lee v. United States*, 343 U.S. 747, 96 L. Ed. 1270, 72 S. Ct. 967 (1952); *United States v. Lee*, 274 U.S. 559, 71 L. Ed. 1202, 47 S. Ct. 746 (1927). Binocular observations made from "open fields" have been condoned. *Fullbright v. United States*, 392 F.2d 432 (10th Cir. 1968), *cert. denied*, 393 U.S. 830 (1968); *Hodges v. United States*, 243 F.2d 281 (5th Cir. 1957). *See also Whistenant v. State*, 50 Ala. App. 182, 278 So. 2d 183 (1973), *cert. denied*, 291 Ala. 802, 278 So. 2d 198 (1973), *cert. denied*, 414 U.S. 1066 (1973). In *Fullbright*, government agents received information indicating that alcohol was being illegally produced at a certain location and kept the described premises, including a house and shed, under surveillance from an adjacent field. With the aid of binoculars the agents observed, through the open door of the shed, defendant and others operating a still within. Defendant maintained his arrest and the subsequent search of the automobile he occupied was based upon information gained through illegal search. In upholding the arrest and

search the court expressed its belief that there had been no illegal search as follows, at page 434:

When the investigators made their initial observation, the door to the shed was open and its light was sufficient to reveal what was going on. The extent of the investigators' action at the time was to look. And the use of binoculars did not change the character or admissibility of the evidence or information gained.

(Footnotes omitted.)

While emphasis was placed on the fact that "open fields" are not protected by the Fourth Amendment and that these observations were made outside the "curtilage" the court continued at page 434:

The investigator here did not make a "search" of any papers, house, persons, or effects in the usual sense but rather made distant observations of a house and shed the direct search of which we shall assume would have been constitutionally prohibited without a warrant as being within the "curtilage".

(Footnote omitted.) The court went on to note, however, that there may be circumstances wherein surveillance from outside a curtilage could constitute an illegal search in light of *Katz*.

In *Katz*, the United States Supreme Court fashioned the "reasonable expectation of privacy" test for determining the validity of searches and seizures. In that case government agents attached an electronic listening device to the exterior of a public telephone booth enabling them to overhear a defendant's conversations. They had received no prior judicial authorization for such activity. The court held that when the defendant entered the telephone booth and closed the door he exhibited a reasonable expectation that his conversations would not be overheard. Because the government agents failed to obtain prior judicial authorization, their activities invaded the defendant's reasonable expectation of privacy and violated the Fourth Amendment's prohibition of unreasonable searches and seizures.

In a recent case the Pennsylvania courts had reason to consider the validity of binocular observations in light of

the *Katz* decision and found there had been no violation of Fourth Amendment rights. In *Commonwealth v. Hernley*, 216 Pa. Super. 177, 263 A.2d 904, 48 A.L.R.3d 1172 (1970), *cert. denied*, 401 U.S. 914 (1971), FBI agents suspected illegal gambling forms were being prepared and kept a printshop under surveillance. During the course of the surveillance an agent noticed the presses in the shop were being operated. Due to the location and size of the windows, the agent was unable to observe the activities within. So, he mounted a ladder and, with the aid of binoculars, saw gambling forms being run off the press. The trial court held the "search" unreasonable on the basis of *Katz*. The lower court was reversed on appeal. The appellate court noted that the defendant failed to preserve his privacy from visual observation by not curtaining the window. As a result it held the defendant had no justifiable or reasonable expectation of privacy. *See also State v. Brown*, 9 Wn. App. 937, 515 P.2d 1008 (1973).

In the instant case defendants' window was not curtained, thereby negating any reasonable expectation of privacy from visual observation under the circumstances. *State v. Brown, supra.* Plants resembling marijuana could be seen in the window without the aid of binoculars. The fact that the evidence does not disclose the proximity of the plants to the window is relatively unimportant as applying simple principles of geometry at the various points of observation indicates that the plants were near or in the window and not secreted within the room or hidden from public view. Further, Detective Clift committed no physical trespass while making his observations of the marijuana plants. Binoculars were utilized merely to confirm Clift's earlier observations. Having confirmed them, Clift obtained a search warrant for the premises based upon the totality of his personal observations. The use of binoculars under these circumstances did not constitute an illegal search of the premises.

Defendants urge that Clift's binocular observations were illegal and that his failure to state, in his application

for a search warrant, that he used binoculars invalidated the warrant. However, since the binocular observations made under the attendant circumstances did not amount to an illegal search it is clear there was sufficient probable cause to issue the warrant. The affidavit relied upon showed probable cause on its face when the affiant stated he personally saw marijuana plants growing in defendants' window. The fact that Clift did not state that his observations were aided by the use of binoculars is of only peripheral relevancy at best. Factual inaccuracies in the affidavit, if they can be called inaccuracies in this case, do not destroy the validity of the warrant issued pursuant to it, if they are of only peripheral relevancy. *Rugendorf v. United States*, 376 U.S. 528, 11 L. Ed. 2d 887, 84 S. Ct. 825 (1964); *State v. Hink*, 6 Wn. App. 374, 492 P.2d 1053 (1972).

The warrant, being issued upon probable cause, and the subsequent search pursuant to it were valid. The trial court is reversed and these causes are remanded.

HALE, C.J., and FINLEY, HUNTER, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

UTTER, J. (concurring)—I concur in the decision of the majority because I understand it to rest on the proposition that since the plants were visible and identifiable by the unaided eye from the street in front of defendants' apartment, there could be no reasonable expectation that their existence or nature would remain private. The use of binoculars here is therefore irrelevant because they revealed no more than was discernible without them. There is no justification for an expectation that items exposed to the unaugmented view of passersby will remain private. But a belief that one's neighbors and local police will refrain from using binoculars to peer through open windows may well be reasonable. Were defendants' plants recognizable *only* through the use of binoculars we would have to reach that more

difficult question. They were not, however, and we do not.

RoSELLINI, J., concurs with UTTER, J.

Petition for rehearing denied March 5, 1975.