Rob BRENNEMAN and Thomas KING
*v.* STATE of Arkansas

CR 78-62                                573 S.W. 2d 47

Opinion delivered October 30, 1978
(In Banc)
[Rehearing denied December 11, 1978.]

*Ike Allen Laws, Jr., P.A.,* and *Jack Holt, Jr.,* for appellants.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Deputy Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants were found guilty of manufacturing a controlled substance with intent to deliver, in violation of Ark. Stat. Ann. § 82-2617 (a) (1) (ii) (Repl. 1976). The substance was marijuana. It was discovered when two deputies of Sheriff Donald Meeks of Johnson County attempted to serve a citation on one of the appellants. Appellants assert four points for reversal. We find no reversible error.

Appellants' major contention is that the court erred in refusing to suppress physical evidence seized by officers and introduced into evidence. This was not error. On June 18, 1977, Deputy Sheriff Clarence Pelts and another deputy sheriff named Felkins observed Brenneman and King (strangers to the officers) about a pickup truck stopped at a spring on

Highway 103, near Oark. Appellants were loading water in 50 gallon barrels. The officers noted that the vehicle bore an out-of-state license plate. They asked appellants for identification and driver's licenses. Appellants did not have driver's licenses in their possession. They told the officers that they lived in a cabin north of Oark that belonged to a lady by the name of Leibling. The officers caused a check to be made on the defendants and ascertained that the truck was not stolen and that appellants were not wanted elsewhere on criminal charges. The investigation revealed that the license plate on the vehicle had not been issued for the vehicle on which the officers had seen it, or to either of the appellants. When they received this information, Pelts issued a citation to Brenneman upon a charge of using a fictitious license plate.

Pelts and Felkins went to the cabin described by appellants. There they saw the vehicle at which they had seen appellants and parked their car in front of it. The cabin itself is about 400 feet off the road and is not visible from the road. It is a one-room building. The officers knocked on the door, but no one answered, so they stepped to the corner of the cabin. Pelts said that, since they had seen the vehicle, they thought that appellants were somewhere around the place and stepped to the corner of the house, just a couple of steps from the door. They then saw a patch of plants which they took to be marijuana, 18 to 20 feet away. It contained between 25 and 50 plants. They then walked through the patch, looked around and saw six other patches. Thereafter they looked through a window in the cabin and saw a marijuana plant in a pot in the back window.

The officers then called the sheriff by radio and he came to the scene and observed what his deputies had discovered. The sheriff then went to Clarksville and obtained a search warrant. Upon his return with the warrant, the officers looked through the window and observed what appeared to be marijuana plants in pots inside the cabin. They entered the house and searched it, where marijuana and other pertinent materials admitted into evidence were found. The next day appellants were arrested while they were in the public road in front of the cabin, some 300 to 400 feet away.

In considering the validity of the warrantless search on appellate review, we apply the same rules as govern us in consideration of trial court rulings on voluntariness of confessions. This means that we make an independent determination based upon the totality of the circumstances, giving considerable weight to the findings of the trial judge in the resolution of evidentiary conflicts and deferring to his superior position to pass upon the credibility of the witnesses, but we set aside the trial judge's holding only when it is clearly against the preponderance of the evidence. *State v. Osborn,* 263 Ark. 554, 566 S.W. 2d 139.

Appellants first attack the original encounter between appellants and the officers as an illegal "stop" and assert that the search was the fruit of that poisonous tree. We do not agree. It must be remembered that the officers did not actually stop, much less arrest, either of the appellants. The only testimony at the suppression hearing in this regard was that of Pelts. The fact that the officers, after observing this license, stopped to "check them out" and did so, by asking for driver's licenses and identification, is not sufficient basis for ascribing to them an ulterior motive for their action. We presume that an officer acted lawfully and properly in the performance of his duty, unless there is evidence to the contrary. *Williams v. State,* 253 Ark. 973, 490 S.W. 2d 117. A motor vehicle operator is required to display his operator's license upon demand of a peace officer. Ark. Stat. Ann. § 75-323 (Repl. 1957). A person driving, or in control of, a motor vehicle is required to display the registration certificate for the vehicle upon demand of a police officer. Ark. Stat. Ann. § 75-140 (Supp. 1977). The momentary stopping of a citizen who is the driver of a motor vehicle to determine whether he has a valid operator's license is lawful, permissible to carry out the statutes regulating the operation of motor vehicles and not a violation of the driver's constitutional rights. There was no evidence that either Brenneman or King was placed under any kind of restraint whatever, or that they were asked anything except to display driver's licenses and identification.

This case is strikingly similar to *United States v. Turner,* 442 F. 2d 1146 (8 Cir., 1971), where a St. Louis police officer, having noticed a car being driven on a highway with the

trunk lock punched out, stopped it as a matter of routine check and asked the driver if he had a driver's license. When he received a negative response, the officer arrested the driver for operating a motor vehicle without a driver's license. After the arrest, the officer made a check and found that the automobile had been stolen. The contentions made in regard to the legality of the arrest were quite similar to the arguments advanced here. Judge Lay, speaking for the Eighth Circuit Court of Appeals, said:

> The police officer clearly had probable cause to arrest the defendant for failure to have a proper driver's license under Missouri law. It is argued, however, that the officer's motive in stopping defendant's car was not to check his driver's license, but merely to pursue his suspicion of some other crime. Thus, it is contended that the officer wanted to make an unwarranted search for evidence of some unidentified crime. We do not find it unreasonable for an officer to inquire as to a driver's license under these circumstances. It is conceded under the state law of Missouri that an officer has a right to stop an automobile to make a routine check for an operator's license. \*\*\* Under these circumstances it is difficult to rationalize that this right of preliminary inquiry may be obviated because suspicious circumstances, even though they may be unfounded, might have motivated an officer to investigate. \*\*\* [Citations omitted.]

We agree with the Eighth Circuit and have previously followed its reasoning. *Thomas* v. *State,* 262 Ark. 83, 553 S.W. 2d 41. See also, *Enzor* v. *State,* 262 Ark. 545, 559 S.W. 2d 148; *Perez* v. *State,* 260 Ark. 438, 541 S.W. 2d 915.

Appellants also attack the propriety of the action of the officers with regard to the citation. Pelts issued it for Brenneman upon a charge of operating a motor vehicle with a fictitious license, in violation of Ark. Stat. Ann. § 75-225 (Repl. 1957). That section prohibits the operation of a motor vehicle which displays a number belonging to any other vehicle or a fictitious registration number. The citation was not issued until a thorough check had been made. It was issued

four days after the first encounter. The officers took it to the place appellants had said they were residing. The officers were warranted in their belief that appellants, or one of them, were about the premises because of the presence of the motor vehicle at which they had previously been seen. It was natural and proper for the officers to take steps to ascertain whether Brenneman was on the premises, but perhaps outside the house, when no one answered a knock on the door. As soon as they rounded the corner of the house, they saw what they believed were marijuana plants in plain view. They had a right and duty to be where they were when they saw this. Subsequent actions were also a natural consequence of the observation they had made and a means of confirming their belief that the plants were marijuana. It was appropriate that they report what they had found to the sheriff, in whose name and stead they were acting, and seek instructions about further action. It is significant on the question of the reasonableness of their action and their good faith that no effort was made to search the dwelling house until a search warrant had been obtained.

A citation such as that involved here is issued in lieu of arrest and the person cited may secure his release only by signing a written promise to appear or by posting a bail bond. Ark. Stat. Ann. § 75-1008 (Supp. 1977). The officers went to the premises primarily to serve a citation, but, potentially, to arrest Brenneman. Thus, there was no more limitation on their actions than there would be if they had been serving a warrant of arrest for the offense charged.

It is legal for an officer to enter on private premises to execute an arrest warrant, if he has reasonable cause to believe that the person named in the warrant can be found there. *Wanzer v. State,* 202 Md. 601, 97 A. 2d 914 (1953); *Palmer v. U.S.,* 192 A. 2d 801 (D. C. App., 1963); *U.S. v. McKinney,* 379 F. 2d 259 (6 Cir., 1967); *Fisher v. Volz,* 496 F. 2d 333 (3 Cir., 1974); Restatement of the Law, Torts (2d Ed.) § 204. He may enter the dwelling occupied by the person to be arrested (sometimes forcibly) for the purpose of executing the warrant. *State v. Shue,* 16 N.C. App. 696, 193 S.E. 2d 481 (1972); *Palmer v. U.S.,* supra. The United States Circuit Court of Appeals for the Fifth Circuit has spoken clearly on

this matter in *U.S.* v. *Cravero*, 545 F. 2d 406 (1976), in considering a petition for rehearing. It said:

> As early as *Agnello* v. *United States*, 269 U.S. 20, 46 S. Ct. 4, 70 L. Ed. 145 (1925), the Supreme Court recognized that an entry to execute an arrest warrant is an exception to the requirement of a search warrant to intrude into a home. See also *United States* v. *Jeffers*, 342 U.S. 48, 72 S. Ct. 93, 96 L. Ed. 59 (1957); *United States* v. *Rabinowitz*, 339 U.S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950). In *Ker* v. *California*, the Court quoted with approval Justice Traynor's opinion in *People* v. *Maddox*, 46 Cal. 2d 301, 306, 294 P. 2d 6, cert. denied, 352 U.S. 858, 77 S. Ct. 81, 1 L. Ed. 2d 65 (1956):
>
>> "[W]hen an officer has reasonable cause to enter a dwelling to make an arrest and as incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable."
>
> 374 U.S. 23, 83 S. Ct. 1623, 1633, 10 L. Ed. 2d 726 (1963).

Even if we assumed that the citation could be served only in the manner in which civil process might be served, the officers had a right to do as they did in attempting to serve the citation, even though their knock on the door went unanswered. Not only was it logical for them to believe that Brenneman was somewhere about the premises, there was no trespass on their part in going to other parts of the curtilage to endeavor to serve the citation. It is true that they had no right to make a forcible entry of the dwelling house simply for the service of civil process. Obviously the officers were not guilty of a trespass and were doing what was normal and appropriate under the circumstances. There was no evidence that they had expected or hoped to find what they found. If they could enter the premises, there is no sound reason to say they could not look about the premises for Brenneman, particularly since they had good reason to believe he was there.

Appellants complain in their reply brief that appellee did not address the question of the legality of the trespass by

the sheriff "onto the defendants' property in order to obtain information for a search warrant." This is not particularly surprising for the argument of the point by appellants is not readily apparent. Appellants did, however, without citation of authority or argument of the point, state:

> Sheriff Donald Meek did eventually obtain a warrant but only after personally confirming the existence of the contraband through an illegal entry.

As previously mentioned, the deputy sheriffs were acting in the place and stead of the sheriff. Ark. Stat. Ann. § 12-1107 (Supp. 1977). They called the sheriff and requested that he come to the scene. When the sheriff arrived, they showed him what they had observed and he went back to town and obtained a search warrant. We find nothing illegal about the sheriff's entry on the property under these circumstances.

Appellants place considerable reliance upon *State* v. *Osborn*, 263 Ark. 554, 566 S.W. 2d 139. What appellants overlook, however, is that in *Osborn* we held that the trial court's finding of fact that the search was unreasonable was not clearly against the preponderance of the evidence; but, if we are to overturn the finding that the search in this case was reasonable, we would have to hold that the finding was clearly against the preponderance of the evidence. In *Osborn*, we said that the trial judge had the right to, and did, believe from the testimony that the legitimacy of the purpose of the original entry into the dwelling house had not been adequately established. We cannot say that here, unless we take the testimony of the only witness on the subject to have been incredible, in spite of the trial judge's finding it credible. Furthermore, the major portion of the incriminating evidence in *Osborn* was not in plain view, as was the case here, and the extended search there was inside a dwelling, while here the objects seen before the search warrant was obtained were visible from the outside of the dwelling. *Osborn* would probably have had some bearing on this case if the officers here had forcibly entered the dwelling without a search warrant. In this case, calling the sheriff, who went to obtain a search warrant before the dwelling was entered, can be taken to be a

good faith attempt to comply with the suggestions made in *Osborn* and *Freeman* v. *State*, 258 Ark. 617, 527 S.W. 2d 909.

There was absolutely no evidence at the suppression hearing that the inquiries made of appellants by the officers or the issuance of the citation or the efforts to serve it were for any improper reason. There is no basis, short of rank speculation, for drawing any inference that the actions taken were a subterfuge to enable the officers to search the premises occupied by appellants.

Appellants also contend that their fundamental constitutional right to effective representation of counsel under the Sixth Amendment to the U.S. Constitution and Art. 2, § 10 of the Arkansas Constitution was denied them by the trial judge's refusal to allow their attorneys to make an oral argument at the close of the hearing on the motion to suppress the evidence obtained by a search of the premises. Appellants recognize that cases such as *Herring* v. *U.S.*, 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975), do not require that oral argument be permitted at any stage of a trial except, at the conclusion of the evidence, just before the case is submitted for judgment. Nevertheless, appellants argue that, to say the least, the Arkansas constitutional provision and our own case law extend this right to them. We do not agree. The right to be heard by counsel does not mean that an oral argument of counsel must be heard every time (or any time) the trial judge must make a decision as to the admissibility of evidence, even when that decision turns upon a question of fact. Such cases as *Dobbins* v. *Oswalt*, 20 Ark. 619, and *Reynolds* v. *State*, 220 Ark. 188, 246 S.W. 2d 724, do not support appellants' position. As we view these cases, they go no further than *Herring*, in which the United States Supreme Court expressly disavowed any intention to imply the existence of a constitutional right to oral argument at any time other than at the close of the trial. They apply only to the right of argument of counsel by way of final summation, or closing argument. *Adams* v. *State*, 176 Ark. 916, 5 S.W. 2d 946, is more nearly in point. There we said that it is not contemplated by Art. 2, § 10, that an accused has any constitutional right to be heard at all times by all counsel he may employ. We now hold that an accused has no constitutional

right to have oral argument by counsel at the conclusion of an evidentiary hearing on a motion to suppress evidence. The allowance of oral argument at this stage of the trial is a matter lying within the sound judicial discretion of the trial court. Here, the only witnesses were the two who testified on behalf of the state, Deputy Sheriff Pelts and Sheriff Johnson, who were cross-examined extensively. The trial judge apparently felt that the relative positions of the parties on the question were adequately revealed by the examination of the witnesses. We find no abuse of discretion.

Appellants argue that the court erred in allowing the state to introduce the testimony of Officer Pelts that he had found in the house several envelopes, papers, documents and other items, bearing appellants' names, while searching pursuant to the warrant issued. This evidence sustained the state's contention that appellants were the actual occupants of this dwelling house. The first argument on this point is that the admission of this testimony violated the best evidence rule stated in Ark. Stat. Ann. § 28-1001, Rule 1002 (Supp. 1977), and that the state did not lay the foundation necessary to bring into play any of the exceptions to the rule enumerated in Rule 1004. It seems clear that at least some of these letters and documents were in the possession of the officers or the prosecuting attorney. This argument might be well taken, except for the fact that this objection was waived by appellants. Sheriff Johnson later gave testimony virtually identical to that of Pelts without any objection having been made. Even though this may have been the strongest evidence on this issue, if it was an issue, there was other evidence indicating that appellants were residing in this house, or cabin. It is notable that the opening statement in appellants' brief commences with this statement: "Defendants Tom King and Robert Brenneman lived in a small cabin in the rural area of Johnson County, Arkansas, about 4-1/2 miles north of Oark, the cabin being approximately 300 yards from the road in a wooded area." But we need not speculate as to the reason for failure to object to Johnson's testimony. Whatever the reason, this failure was a waiver of the objection to the testimony of Pelts. *Hyson* v. *State*, 225 Md. 140, 169 A. 2d 449 (1961); *Peal* v. *State*, 232 Md. 329, 193 A. 2d 53 (1963); *Barber* v. *State*, 191 Md. 555, 62 A. 2d 616 (1948); *State* v. *Godwin*, 224 N.C. 846,

32 S.E. 2d 609 (1945); *Lewis* v. *State,* 196 Ga. 755, 27 S.E. 2d 659 (1943); *East* v. *State,* 420 S.W. 2d 414 (Tex. Cr. App. 1967); *Marsh* v. *State,* 120 Ga. App. 46, 169 S.E. 2d 615 (1969); *State* v. *Dettore,* 104 R.I. 535, 247 A. 2d 87 (1969); *State* v. *Baber,* 297 S.W. 2d 439 (Mo., 1956). This evidence was not hearsay, as appellants now contend. See *U.S.* v. *Hazeltine,* 444 F. 2d 1382 (10 Cir., 1971); *State* v. *Porter,* 344 So. 2d 1031 (La., 1977).

Appellants also contend that the state failed to comply with its obligations under Criminal Procedure Rule 17.1 (a) (v), and that the testimony of the officers should have been excluded for that reason. This rule requires that the prosecuting attorney disclose to defense counsel, upon timely request, any books, papers, or documents which the prosecuting attorney intends to use in any hearing or at trial or which were obtained from or belong to the defendant, but the exclusion of such evidence is not mandatory. See Rule 19.7 (b). The letters and documents were not introduced into evidence. Any right appellants might have had to have testimony about them excluded was also waived by their failure to make any objection to the testimony of Sheriff Johnson.

Appellants complain that the trial court instructed the jury that possession of marijuana in excess of one ounce might be considered by it, along with all other evidence, in determining whether or not the controlled substance was possessed with intent to deliver. This was a proper instruction. *Milburn* v. *State,* 260 Ark. 553, 542 S.W. 2d 490. See also, *Rowland* v. *State,* 262 Ark. 783, 561 S.W. 2d 304.

We find no reversible error, so the judgment is affirmed.

BYRD and HICKMAN, JJ., dissent.

HOLT, J., not participating.