[No. 3008–2.  Division Two.  January 17, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES JOSEPH DAUGHERTY, *Appellant.*

*William G. Knudsen* of *Kitsap County Public Defender,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Ronald A. Franz, Deputy,* for respondent.

PETRIE, J.—James J. Daugherty appeals his convictions of second–degree burglary and second–degree theft. His primary contention on appeal is that the trial court erred by refusing to suppress evidence seized by the police in his garage. We hold that the evidence was seized in violation of the fourth amendment to the United States Constitution. Accordingly, we must reverse the convictions.

The evidence presented at the suppression hearing establishes the following pattern. Shortly after 10 a.m. on May 12, 1977, four police officers drove to Mr. Daugherty's residence to investigate a burglary which had taken place the previous night. They had been told that at 4:30 a.m. Mr. Daugherty was seen in his pickup truck which at that time was in a parking stall backed up against the burglarized establishment and that a wheeled, black safe approximately 24 by 24 by 21 inches had been reportedly taken by the burglar. When they arrived at Daugherty's residence, they saw his pickup truck and an old model army truck parked side–by–side in a front yard driveway, backed up to the completely opened garage door. Mr. Daugherty, who was then in the garage, saw the police arriving, walked into the middle of his driveway between the two vehicles, and engaged in a brief conversation with Officer Patterson approximately 2 feet from the curb. Another officer, Krebs, walked around the army truck and, in his words, "took a

flanking action in case the suspect would flee or if there was [*sic*] additional suspects." He remained outside the garage; but looking through the open garage doorway, he observed "a black metal object with wheels on the bottom that resembled a safe . . . lying directly behind the pickup on the floor of the garage . . . covered partially" with a tarpaulin. The safe was not in an upright position and was situated in the garage in space which would ordinarily be occupied by a vehicle. Krebs shouted his find to Patterson, who promptly arrested Daugherty for burglary.

All the officers then entered the garage, seized the safe, and subsequently concluded that, indeed, it was the safe which had been taken in the previous night's burglary. At least one of the officers also entered the living quarters of the residence and seized property which had no connection with this burglary. Photographs indicate that the garage is attached to one side of the defendant's residence, the garage door faces the street, and the driveway forms a part of the unenclosed front yard.

■ Several conclusions of law flow from this fact pattern. First, the defendant's driveway was clearly accessible to the public; at best, it was only a semi–private area. *United States v. Magana,* 512 F.2d 1169 (9th Cir. 1975). Technically, the officers' entrance onto the driveway might have constituted an abstract, theoretical trespass, but Daugherty's privacy was not invaded. *State v. Wright,* 74 Wn.2d 355, 444 P.2d 676 (1968). The driveway was not a constitutionally protected area. *United States v. Brown,* 487 F.2d 208 (4th Cir. 1973). *See also Wattenburg v. United States,* 388 F.2d 853 (9th Cir. 1968). Accordingly, when Officer Krebs observed the safe from outside the garage he had not yet intruded upon a constitutionally protected area. *Air Pollution Variance Bd. v. Western Alfalfa Corp.,* 416 U.S. 861, 40 L. Ed. 2d 607, 94 S. Ct. 2114 (1974). He saw the safe in "open view" and immediately recognized its significance. (For purposes of this opinion, we will assume that Krebs *inadvertently* observed the safe, although Daugherty contends the officers' actions and

words manifested a previously formed intent to search his house.)

Krebs' observation of the safe, coupled with his prior knowledge of the previous night's events, undoubtedly provided the officers with probable cause to arrest Daugherty and with probable cause to seek a search warrant. *State v. Manly,* 85 Wn.2d 120, 530 P.2d 306 (1975).

The real issue, therefore, reduces to a question of whether or not the police had the right to cross over Daugherty's threshold—into the garage—and seize the safe without the aid of a search warrant. The safe was partially covered and inside the garage—thus evidencing some expectation of privacy. Hence, seizure of the safe was constitutionally prohibited. *Taylor v. United States,* 286 U.S. 1, 76 L. Ed. 951, 52 S. Ct. 466 (1932). Nevertheless, the prosecution suggests justification can be found in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). *Coolidge* explains the so–called "plain view" exception to the general rule that warrantless searches and seizures are presumed to be constitutionally invalid. The so–called "plain view" exception presupposes a warrantless intrusion of a constitutionally protected area, but requires "prior justification for an *intrusion.*" (Italics ours.) *Coolidge,* at 466.

In the case at bench, Officer Krebs' observation of the safe was not a "search" within the meaning of the Fourth Amendment; it was not truly a "plain view" observation. He merely observed from a position outside a protected area, that which was openly visible inside the protected area. *State v. Manly, supra; State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968). *State v. LaPierre,* 71 Wn.2d 385, 428 P.2d 579 (1967). His intrusion into a constitutionally protected area did not occur until he (and the other officers) entered the garage and seized the safe. More precisely described, the seizure followed a preintrusion "open view" observation, in contrast to a post–intrusion "plain view" observation. *See State v. O'Herron,* 153 N.J. Super. 570, 380 A.2d 728 (1977), *cert. denied,* 439 U.S. 1032 (1978). In

the absence of exigent circumstances, the officers could not seize that which was presented to them by the incontrovertible testimony of their senses, without first presenting that evidence of probable cause to a neutral and detached magistrate. The constitution requires that a magistrate, alone, is clothed with the power to authorize an intrusion into a constitutionally protected area and a seizure of evidence found therein. *McDonald v. United States,* 335 U.S. 451, 93 L. Ed. 153, 69 S. Ct. 191 (1948).

■ We turn then briefly to the final question of whether exigent circumstances permitted a warrantless seizure. The prosecution makes no contention that exigent circumstances existed, and we find none. Indeed, the safe was not the type of evidence which could be readily destroyed or disposed of. Except for the police, the only person at the premises was the defendant, and he was arrested. There is simply no indication that the safe was threatened with removal or destruction. Inconvenience to the officers is insufficient to excuse the necessity to seek authorization from a magistrate. *Johnson v. United States,* 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948). The State did not sustain its burden of justifying a warrantless search.

The judgment and sentence must be reversed; the safe which was seized in violation of the constitution must be suppressed; and the defendant is entitled to a new trial at which the prosecution may present such other evidence as is not tainted by the unlawful seizure.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied February 9, 1979.

Review granted by Supreme Court May 4, 1979.