[Nos. 3515–II; 3522–II.   Division Two.   April 30, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. SUZZI SEAGULL, ET AL, *Appellants*.

*David V. Johnson,* for appellants.

*Grant S. Meiner, Prosecuting Attorney,* and *Kenneth L. Cowsert, Chief Deputy,* for respondent.

REED, C.J.—Following a trial to the court, defendants Suzzi Seagull and Douglas Gilson were found guilty of felony possession of marijuana, RCW 69.50.401. Defendants have appealed their convictions alleging (1) that the trial court erred in denying their motion to suppress, and (2) that RCW 69.50.401 is unconstitutional insofar as it applies to possession of marijuana in the home. We affirm.

## MOTION TO SUPPRESS

At a suppression hearing first held on September 15, 1977, and reconsidered in December 1977, the following facts were elicited.

On the afternoon of July 8, 1977, Sergeant Victor Talvi of the Clallam County Sheriff's office was dispatched to a rural area near defendants' home to investigate a blood-stained abandoned vehicle. As a part of his investigation, Sergeant Talvi went from house to house in the area contacting the residents and questioning them about the vehicle and/or its occupants. Defendants' house was the third house visited.

Upon arriving at defendants' house, the officer parked his car in the driveway next to a truck, walked up to the south porch and knocked on the door. While knocking, he recalled having been told by former residents that persons in the house could not hear knocking on the south door. Accordingly, he left the south porch and began walking around the left side of the house to the north porch.[1] As Sergeant Talvi testified:

A [S]o I came—retraced my steps, came around this way and I got just prior to the greenhouse, which would be down here is when I noticed what appeared to me to be Marihuana leaves in there.

. . .

Q Approximately how far would you say you were from the greenhouse at that point?
A Six, ten feet.
Q Did you approach the greenhouse to make any clearer observations?
A No.

After making his observations, Sergeant Talvi abandoned his attempt to contact the occupants of the house and returned to his car. Based on Talvi's affidavit, a search warrant was issued and executed the following day by a different officer. During the search, 60 marijuana plants were discovered in the far corner of the greenhouse. As will

---

[1]Apparently the south entry had originally been the "front" door and was served by the driveway and parking area located off the county road. At some time the occupants began using the north entry as the "front" or main door. We have reproduced herein a facsimile of exhibit 2 which depicts the general layout of the home and yard together with Sergeant Talvi's route and the point from which he made his observations.

be noted later in this opinion, the foliage which Sergeant Talvi observed subsequently proved to be tomato plants. The actual marijuana plants discovered under the warrant could not have been seen from Sergeant Talvi's vantage point.

During the original suppression hearing, when asked whether there was a walkway going from the south porch to the north porch, Gilson testified:

Yeah, the pathway—the grass is sort of worn away at the end of the porch. The vegetation shows a path going right around the corner to the front [north].

Gilson also testified that he had measured the distance from the pathway to the greenhouse and found it to be 20 feet.

Following the hearing the trial judge orally denied the motion and the matter proceeded to trial. On the day of trial the motion to dismiss was renewed and again denied. No formal or written findings of fact were entered on the original suppression hearing. However, a special finding

addressing the legality of Sergeant Talvi's presence on the land was included among the findings and conclusions entered at trial as a basis for adjudging defendants guilty. After this appeal was perfected the parties stipulated that the matter be remanded to the trial court for entry of findings of fact on the suppression hearings. This was done and findings were entered on April 3, 1979. It is one of these findings which provides the foundation for defendants' appeal.

Defendants contend that Sergeant Talvi's observations of the marijuana were made from a place he had no right to be. Consequently the defendants argue the marijuana should have been suppressed because it was the product of an unreasonable and therefore unconstitutional search of their premises. In support of this contention defendants rely entirely upon belated suppression hearing finding of fact No. 3, which reads:

As he was walking around the west side of the Defendants' house, Sergeant Talvi *departed from the pathway and approached the greenhouse.* At a point between 6 to 10 feet from the greenhouse, he observed green vegetation pressed up against the plastic which formed the south wall of the greenhouse. He made this observation through a two-inch clear space in the visqueen just below one of the horizontal two by fours forming the frame of the greenhouse. The remainder of the visqueen was damp on the inside and could not be seen through.

(Italics ours.)

It is obvious the trial judge did not believe that Talvi's slight departure from the pathway required a conclusion that his actions were unlawful. Had the trial judge suppressed the evidence, we would likely be constrained to uphold his decision. However, he did not suppress the evidence. For this reason and because the findings of fact ultimately entered are sparse to say the least, we deem it both necessary and appropriate to look to the entire record and particularly to other findings and to the oral rulings and observations of the trial judge.

Finding of fact No. 1 entered immediately after denial of the renewed motion at trial reads as follows:

That Sergeant Victor Talvi of the Clallam County Sheriff's Office was *properly and justifiably upon the premises* occupied by the Defendants, since he was seeking information regarding a possible injury accident, *when he observed* what appeared to him to be marihuana growing in a greenhouse . . .

(Italics ours.)

And in his oral ruling denying the original motion the judge stated:

The fact that the suggestion that the Sergeant was there on a trespass, doesn't impress the Court. There's an implied invitation to people to come to the door of a house to deliver packages, to visit friends, et cetera, to ask questions, as the sheriff was doing, or attempting to do about what they believed to be a crime of violence and his going around to the front door instead of staying at the back door, I think is certainly consistent with his testimony that previously he had knowledge that you could not hear in the front room if he knocked on the back door.

And, during the hearing on the renewal of the motion the trial judge observed, correctly so, we think, that:

Constitutional rights should not rise or fall on the question of whether an officer goes to the right hand side or the left hand side of a tree.

■ Given that defendants had a reasonable expectation of privacy in their greenhouse, thus making it a constitutionally protected area, *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967); *State v. Manly*, 85 Wn.2d 120, 530 P.2d 306 (1975), it does not follow as a matter of rote that Sergeant Talvi's observation of what he believed was illicit material therein impermissibly violated defendants' constitutional rights.

■ It is undisputed from the record, and the trial court found, that Sergeant Talvi entered upon the premises in pursuit of a legitimate police investigation or inquiry. His

purpose was to question the occupants about the abandoned vehicle and its occupants. This he had the right to do, *United States v. Freeman,* 426 F.2d 1351 (9th Cir. 1970); *Davis v. United States,* 327 F.2d 301 (9th Cir. 1964). Clearly the front porch, driveway and parking area were within that portion of the premises to which the public, including police officers on legitimate business, are impliedly invited by the owner, and in which the owner has a lesser expectation of privacy. *Lorenzana v. Superior Court,* 9 Cal. 3d 626, 511 P.2d 33, 108 Cal. Rptr. 585 (1973); *State v. Daugherty,* 22 Wn. App. 442, 591 P.2d 801 (1979); *see also United States v. Anderson,* 552 F.2d 1296 (8th Cir. 1977); *United States v. Bradshaw,* 490 F.2d 1097 (4th Cir. 1974); *State v. Crea,* 305 Minn. 342, 233 N.W.2d 736 (1975); *Pistro v. State,* 590 P.2d 884 (Alaska 1979); *Brenneman v. State,* 264 Ark. 460, 573 S.W.2d 47 (1978); 1 W. LaFave, *Search and Seizure* § 2.3 (1978). The same is true of the unenclosed, unimproved side yard or walkway between the house and outbuildings leading to the rear of this rural home. Photos of the area fail to disclose a definite pathway. Rather, there is only a worn–down area immediately adjacent to the "front porch"; from there on the area is merely dirt and sparse weeds or grass. In our view it would be extremely unrealistic to require Sergeant Talvi to walk a tightrope on his way to the rear of the premises in furtherance of his quest for the owners of the house. As stated in *Lorenzana* at page 629:

> A sidewalk, pathway, common entrance or similar passageway offers an implied permission to the public to enter which necessarily negates any reasonable expectancy of privacy in regard to observations made there. The officer who walks upon such property so used by the public does not wear a blindfold; the property owner must reasonably expect him to observe all that is visible. In substance the owner has invited the public and the officer to look and to see. But, by the same reasoning, the officer who intrudes upon property not so open to the public enjoys no such prerogatives.

██ The record is entirely bereft of any evidence that Sergeant Talvi strayed from the "pathway" for a purpose alien to that for which he came. On the contrary, several neighbors testified that Talvi had indeed come to their homes with his inquiries both before and after his visit to defendants' premises. He did not know defendants and his only other visit had occurred during the tenure of a previous tenant. Defendants offered no evidence of an ulterior motive and Talvi had no prior information which would have led him to suspect the presence of contraband. On this basis the trial judge concluded that Sergeant Talvi was not using his original lawful purpose in coming upon the property as a guise or excuse to conduct a generalized search. *Brenneman v. State, supra.* Thus the officer was in a place where he had a right to be when he observed what he mistakenly but honestly believed was contraband in the greenhouse. Observations of things in plain sight from a place where a police officer has a right to be do not amount to a search in the constitutional sense. *Harris v. United States,* 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992 (1968); *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). The evidence was properly held admissible.

### VALIDITY OF WARRANT

Defendants also challenge the issuance of the search warrant which was based upon Sergeant Talvi's affidavit that he had seen and identified marijuana. As it turned out, the vegetation seen by Talvi was in fact tomato plants; actual marijuana was located in the far reaches of the greenhouse where it could not have been observed from without.

██ We first note that Sergeant Talvi's sworn statements, if accurate, establish probable cause for issuance of a search warrant. *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *State v. Patterson,* 83 Wn.2d 49, 515 P.2d 496 (1973).

Evidence should not be suppressed unless the trial court finds that the government agent was either recklessly or intentionally untruthful. A completely innocent misrepresentation is not sufficient for two reasons. Most importantly, the primary justification for the exclusionary rule is to deter police misconduct . . ., and good faith errors cannot be deterred. Furthermore, such errors do not negate probable cause. If an agent reasonably believes facts which on their face indicate that a crime has probably been committed, then even if mistaken, he has probable cause to believe that a crime has been committed. Such errors are likelier and more tolerable during the early stages of the criminal process, for issuance of a warrant is not equivalent to conviction.

*United States v. Carmichael,* 489 F.2d 983, 988 (7th Cir. 1973). *See also Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978); *State v. Goodlow,* 11 Wn. App. 533, 523 P.2d 1204 (1974).

While mistaking tomato plants for marijuana must have been a source of embarrassment to Sergeant Talvi, there is nothing in the record to suggest this was other than an innocent mistake. There is no evidence that the error was the product of intentional falsehood or reckless disregard for the facts. The trial court found that Sergeant Talvi "erroneously believed" he had seen marijuana. He further found that although tomato plants or marijuana plants can be readily distinguished when seen side by side, "the officer could have identified these as marijuana." These findings and ruminations by the trial judge indicate his belief that Sergeant Talvi had been truthful though mistaken. We will not invalidate the warrant because of an honest mistake.

## CONSTITUTIONALITY OF RCW 69.50.401

In their final assignment of error defendants allege that RCW 69.50.401 is unconstitutional as applied to possession of marijuana in the home for personal use. The Supreme Court has just ruled on this issue. *State v. Smith,* 93 Wn.2d 329, 610 P.2d 869 (1980). RCW 69.50.401 is constitutional.

For the reasons set forth above, this court affirms the defendants' convictions.

PETRIE, J., concurs.

PEARSON, J. (dissenting)—After *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), a determination of whether an intrusion on private property constitutes an unreasonable search depends upon the owner's actual "subjective expectation of privacy and whether that expectation is objectively reasonable." *United States v. Freie,* 545 F.2d 1217, 1223 (9th Cir. 1976).

Defendants testified as to their expectation of privacy of the greenhouse. This expectation was objectively evidenced by its construction and location on the premises. Furthermore, they testified that it was physically impossible to see the contents from the point where the observations were allegedly made. In my opinion the officer clearly intruded upon an area of the premises where a right of privacy was both subjectively expected and objectively reasonable. *See Wattenburg v. United States,* 388 F.2d 853 (9th Cir. 1968).

Moreover, the officer entered defendants' premises without express permission. Any implied permission should, in my view, be no broader than is necessary to accomplish the business at hand. Here the officer was purportedly investigating an abandoned vehicle located almost 1 mile from defendants' home. There was evidence the car had been at its location for some time. Defendants' connection with the vehicle was remote at best, and the officer's purpose in finding information about its owner was neither urgent nor compelling.

When the officer received no response to the knock on the door nearest his point of entry, he should have departed. At the very least, given his prior knowledge, he should have taken the most direct route to the other entry without departing from that route, as the court's findings suggest that he did. Any further intrusion was wholly unwarranted.

In addition, it is obvious from what was discovered when the search warrant was executed, the officer could not have observed the contraband without entering the greenhouse. His statements of what he observed and the point from which he made the observation are implausible and suspect. At the very least, I consider his conduct so questionable that the court should not countenance it.

I would hold that the contraband was not observed from a place where the officer had a right to be and that his intrusion on defendants' privacy was unconstitutional. *Wattenburg v. United States, supra.*

Therefore, I dissent.

Reconsideration denied June 2, 1980.

Review granted by Supreme Court October 24, 1980.