[No. 4469–II. Division Two. July 21, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. DARYL L. JORDAN, *Appellant*.

*Joseph O. Daggy* and *Roethler & McCulloch,* for appellant.

*Henry R. Dunn, Prosecuting Attorney,* and *Randy Furman, Chief Deputy,* for respondent.

PETRIE, J.—Defendant, Daryl Lee Jordan, appeals his conviction of felonious possession of marijuana in excess of 40 grams. His only contention on appeal is that the trial court erred by denying his motion to suppress evidence seized by the police on the date of the alleged crime. We reverse.

Shortly after midnight on June 22, 1979, two officers of the Longview Police Department arrived at a duplex to which they had been dispatched as a result of a neighbor's complaint that a loud party was in progress at that address. As they approached the residence they heard music and voices from a distance of 100 feet. Their original intent was to contact the resident and "quiet it down." When they reached the porch, however, they "noted a crack between the casing of the window and the drape just to the left of the front door." They testified that the opening was 6 inches wide and provided a view into the living room. While standing on the porch, they peered into the room through the opening and observed a dark powdery substance on a coffee table and three people in the room.[1] One of those

---

[1] A 15–year–old girl testified that earlier that evening, when she arrived at the residence, the curtains were open, but she closed them because "I was alone and I

persons placed some of the powdery substance into a "bong" or water pipe and "took four or five drags off of it, . . ." The officers reasoned that the persons inside were in possession of marijuana, and they then formed the intent to enter the premises to arrest the persons inside and seize the marijuana.

The officers knocked on the door and identified themselves as police, but failed to state their purpose. After they knocked, they heard "a lot of scurrying about" and noticed that "[t]he curtain was drawn shut so we could no longer see in the residence." One of the officers shouted that the people inside "had five seconds to open the door or we would kick it down."

After 5 seconds elapsed and the door was not opened, the officers tried but were unsuccessful in their efforts to kick the door open. A neighbor then advised the police that people inside had run out a back door. The police went to the back door, found it open, and entered the residence to look for other persons who might have remained inside. The officers found no one inside the duplex, but an officer seized a portion of the substance on the coffee table, which proved to be marijuana. The total amount was "[p]robably less than 15 grams." Also, while looking for other persons they opened a bedroom closet door and discovered two large marijuana plants. At this point one of the officers left the premises and returned about an hour later with a search warrant.[2] The plants and the defendant's driver's license were then seized. Essentially, these items formed the basis for the felony possession charge.

The crux of this appeal is whether the officers' peering into the living room constituted an unlawful search prohibited by the fourth amendment to the United States Constitution. Our resolution of this issue begins with the

---

didn't want people looking in, . . ." Nevertheless, she acknowledged that the curtains were slightly open and, indeed, she later saw the police looking in through the crack.

[2]The record is silent as to what the remaining officer did during that hour.

recognition that

> [w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

(Citations omitted.) *Katz v. United States,* 389 U.S. 347, 351–52, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). As delineated by *Katz,* our analysis must focus on whether the occupants of the duplex had demonstrated a reasonable expectation of privacy. As Justice Harlan explained in his concurring opinion in *Katz:*

> [T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited.

*Katz,* at 361.

■ Applying these principles to the facts of this case, we note at the outset that the officers were justifiably on the front porch as part of their duty to investigate the complaint of loud noises emanating from the premises. *See State v. Seagull,* 26 Wn. App. 58, 613 P.2d 528, *review granted,* 94 Wn.2d 1016 (1980). We believe, however, that by drawing the curtains the individuals inside the duplex had clearly demonstrated a reasonable expectation of privacy. *See State v. Manly,* 85 Wn.2d 120, 530 P.2d 306 (1975). The fact that the occupants had not completely succeeded in shutting the curtains does not diminish the reasonableness of their expectation of privacy. As stated in *Lorenzana v. Superior Court,* 9 Cal. 3d 626, 511 P.2d 33, 108 Cal. Rptr. 585 (1973),

> Surely our state and federal Constitutions and the cases interpreting them foreclose a regression into an Orwellian society in which a citizen, in order to preserve a modicum

of privacy, would be compelled to encase himself in a light–tight, air–proof box. The shadow of 1984 has fortunately not yet fallen upon us.

*Lorenzana,* at 636–37.

In arguing that the officers' peering into the living room did not constitute a search, the State relies heavily on *State v. Brown,* 9 Wn. App. 937, 515 P.2d 1008 (1973). In *Brown,* Division One of this court held that an occupant of a motel room who knowingly opened the window curtains and negligently failed to close them completely, so that officers "kneeling and peering through the crack in the curtains" could observe activity inside the room, lost a reasonable expectation of privacy. Accordingly, the court held that the area within the officers' view inside the room was not an area protected by the Fourth Amendment and that their observation of persons in possession of heroin inside the room solely by their unaided vision did not constitute a "search" of the premises. To *Brown* might be added *State v. Gerry,* 23 Wn. App. 166, 595 P.2d 49 (1979), in which we held that there is no reasonable expectation of privacy in motel room conversations which can be heard outside the room with the unaided ear.

We believe that *Brown* and *Gerry* are distinguishable. Both of those cases involved surveillance of motel rooms. Although the occupants of a motel room are entitled to the protection of the Fourth Amendment, the extent of privacy they are reasonably entitled to expect may very well diminish. *United States v. Jackson,* 588 F.2d 1046 (5th Cir. 1979); *United States v. Agapito,* 620 F.2d 324 (2d Cir. 1980).

> A private home is quite different from a place of business or from a motel cabin. A home owner or tenant has the exclusive enjoyment of his home, his garage, his barn or other buildings, and also the area under his home. But a transient occupant of a motel must share corridors, sidewalks, yards, and trees with the other occupants. Granted that a tenant has standing to protect the room he occupies, there is nevertheless an element of public or shared property in motel surroundings that is entirely

lacking in the enjoyment of one's home.

*Marullo v. United States,* 328 F.2d 361, 363 (5th Cir. 1964).

 Consequently, we hold that the officers' actions in peering in the curtained window of a private residence constituted a search in violation of the Fourth Amendment. Accordingly, the evidence seized as a result of this search should have been suppressed.

Judgment reversed and remanded for a new trial.

PEARSON, J., concurs.

REED, C.J. (dissenting)—I must respectfully dissent. In my view, this case is controlled by *State v. Brown,* 9 Wn. App. 937, 515 P.2d 1008 (1973), a well reasoned opinion by Division One of this court. The distinction which the majority attempts to draw between this case and *Brown* is illusory. *Brown* was not decided on the basis of a lesser expectation of privacy in a motel room as opposed to a private residence. In fact, except for certain expected intrusions by management such as for housekeeping and the like and the exception for common areas, one has the same expectations of privacy in one's hotel room as in one's own home. *See* the quote from *Marullo v. United States,* 328 F.2d 361, 363 (5th Cir. 1964), on pages 928–29 of the majority opinion.

I confess to at first having entertained some doubts about the police activities in this case. Perhaps this was because of the impression I gained from the briefs and during oral argument that the officers had to strain and contort so that they might see through a tiny opening into the living room. After reviewing the record, however, this appears not to have been the case. The act of leaning over and peering through the opening provided by the carelessly drawn drapes was reasonable and judicious in the circumstances. Here was no purposeful "search" for suspected contraband. *Cf. Lorenzana v. Superior Court,* 9 Cal. 3d 626, 511 P.2d 33, 108 Cal. Rptr. 585 (1973). Rather, the officers had a genuine and, I think, a legitimate interest in ascertaining if

possible whom and how many persons they were soon to encounter. Participants of loud parties have been known to react violently to police efforts to calm or quell the festivities. Policemen have been shot with less provocation.

Simply stated:

> As a general proposition, it is fair to say that when a law enforcement officer is able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used, that detection does not constitute a "search" within the meaning of the Fourth Amendment.

1 W. LaFave, *Search and Seizure* § 2.2 (1978); *see also* LaFave, *supra* § 2.3 and *United States v. Hersh,* 464 F.2d 228 (9th Cir. 1972); *State v. Gott,* 456 S.W.2d 38 (Mo. 1970); *State v. White,* 18 Or. App. 352, 525 P.2d 188 (1974).

As to the other issues, the reaction of the occupants to the knock and announcement provided the exigent circumstances for forced entry. The drugs found in "plain view" during the search for occupants were properly seized.

I would affirm.