[Nos. 2959-3; 2991-3.   Division Three.   October 4, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. NEIL MARTIN CHRISMAN, ET AL, *Appellants*.

*Robert F. Patrick, Aitken, Schauble, Patrick & Neill,* and *Stephen E. Bishop,* for appellants.

*Ronald Carpenter, Prosecuting Attorney,* and *Gerald R. Fuller, Deputy,* for respondent.

MITCHELL, J.*—On the evening of January 21, 1978, Carl Overdahl, carrying a half gallon of gin, walked out of Orton Hall at Washington State University on his way to a party with several of his student friends. At that moment, Officer Daugherty of the Washington State University police department arrived at Orton Hall to investigate an unrelated matter. Officer Daugherty noticed the half gallon of gin and suspected that Overdahl was under the age of 21.

---

*Judge James B. Mitchell is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

The officer stopped Overdahl and asked him for his identification. Overdahl replied that he did not have his identification with him and would have to go upstairs to his room and get it. Overdahl asked the officer if he would wait; the policeman said that under the circumstances, he would have to accompany Overdahl to his room.

While they were waiting for the elevator, the officer asked the student how old he was; he said he was 19. Upon arriving at the eleventh floor, the officer followed Overdahl down the hallway to his room. The door was slightly ajar; Overdahl pushed the door open and entered the approximately 17– by 11–foot room. Officer Daugherty leaned against the doorjamb in the open doorway. At the same time, he noticed that the room was occupied by another student, Neil Chrisman, who appeared visibly nervous upon seeing the police officer.

Officer Daugherty watched the two occupants for a few moments before he saw a tray on a desk 8 to 10 feet from where he was standing; the tray contained seeds. A small pipe lay nearby which his experience led him to believe was used for smoking marijuana. At that point, Officer Daugherty entered the room, walked over and examined the seeds and pipe to verify that what he had been observing was marijuana. For the first time, he gave both Chrisman and Overdahl their *Miranda* rights. They told the officer they understood their rights and agreed to waive them.

The officer then asked them if they had other drugs in the room; Chrisman handed him a small box containing three plastic baggies of marijuana. Officer Daugherty then called another police officer who arrived shortly thereafter. The officers explained to Overdahl and Chrisman that a search of their room was necessary and they could either consent or the officers would have to get a search warrant. The explanation was given in considerable detail and after it was over, the two students conferred in whispers between themselves for several minutes before giving their consent. The officers again gave them their *Miranda* rights; both

students signed written consent forms prior to the search of the room. The search yielded more marijuana and also LSD.

Chrisman and Overdahl were tried without a jury and convicted of possession of more than 40 grams of marijuana. Neil Chrisman was convicted on a second count of possession of LSD. Prior to trial, a suppression hearing was held. The trial judge denied defendants' motion to suppress. Both defendants appeal. We affirm.

Overdahl contends that Officer Daugherty was required to give him his *Miranda* rights before asking for proof of his age since the officer suspected him of being a minor in possession and being underage is an element of that crime. Overdahl further contends that because the officer elicited the incriminating information that he was underage prior to giving him his *Miranda* rights, the officer did not have a justifiable reason for being in the doorway of the room where he observed the drugs, thus the drugs should have been suppressed. We disagree.

■■ The trial judge found that Officer Daugherty had properly placed Overdahl under arrest for minor in possession and was therefore entitled to accompany Overdahl to his room. An officer may arrest for a misdemeanor committed in his presence and the fact that a defendant is later formally charged with another offense does not invalidate an otherwise lawful arrest. *Spokane v. Badeaux,* 20 Wn. App. 731, 734, 581 P.2d 1088 (1978). Overdahl makes no allegation that the detention was an illegal arrest. *See State v. Byers,* 88 Wn.2d 1, 559 P.2d 1334 (1977). As a general rule, incriminating statements made and evidence then subsequently seized while a person is in custody before he has been advised of his *Miranda* rights are inadmissible. *State v. Dennis,* 16 Wn. App. 417, 558 P.2d 297 (1976); *State v. Galloway,* 14 Wn. App. 200, 540 P.2d 444 (1975). *Cf. State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977); *State v. McKeown,* 23 Wn. App. 582, 596 P.2d 1100 (1979). Since Overdahl was neither charged with nor tried for the offense of being a minor in possession, his statement

to the officer regarding his age was immaterial. Evidence of his age had no bearing on the charge for which he was convicted. We find Overdahl was in lawful custody; and, therefore, Officer Daugherty's accompanying Overdahl to his room was proper and the officer's presence justifiable.

Overdahl argues that Officer Daugherty's entry into his room was an unjustifiable intrusion which does not come within any exception to the requirements of the Fourth Amendment. However, since Overdahl was in custody, Officer Daugherty had a duty to accompany him to his room. His presence in the doorway was proper. It is undisputed that Mr. Overdahl pushed the door open and entered the room. In order to keep Overdahl within his view, the officer stood in the doorway looking into the room. There is no suggestion that Overdahl attempted to close the door once he had entered. Prior to entering the room, the officer saw from his vantage point in the doorway what he believed was contraband. Only at that time, did he cross the threshold and seize the pipe and marijuana seeds.

The circumstances here bear a close resemblance to *State v. Daugherty*, 22 Wn. App. 442, 591 P.2d 801 (1979), and the rationale in that case is applicable. The police suspected that Daugherty had burglarized a safe. The police went to Daugherty's home and walked into the middle of his driveway. One police officer looking through the open garage doors into the garage saw an object that resembled a safe, partially covered by a tarpaulin. The officers arrested Daugherty, then entered the garage and seized the safe. The court held that Daugherty's driveway was only semi-private and not a constitutionally protected area. Therefore, the officer's observation of the safe from the driveway was not an intrusion upon a constitutionally protected area; he inadvertently "saw the safe in 'open view' and immediately recognized its significance." *State v. Daugherty, supra* at 444. The seizure of the safe "followed a preintrusion 'open view' observation, in contrast to a post–intrusion 'plain view' observation." *State v. Daugherty, supra* at 445. The court held, however, that since the safe was not the

type of evidence which could be readily destroyed, no exigent circumstances existed which permitted a warrantless seizure.

As in the above case, Officer Daugherty's observation of the pipe and seeds was a preintrusion "open view" observation from the doorway of Overdahl's room which, like the driveway in *State v. Daugherty, supra,* was a semi-private area. Unlike the facts in *Daugherty,* exigent circumstances existed here. Because the drugs could have been readily disposed of while the police officer was trying to obtain a search warrant, sufficient exigent circumstances existed to justify the seizure. The warrantless seizure of drugs which comes within an officer's plain view has been upheld as reasonable. *State v. Dickamore,* 22 Wn. App. 851, 592 P.2d 681 (1979); *State v. Brown,* 17 Wn. App. 587, 564 P.2d 342 (1977); *State v. Campbell,* 15 Wn. App. 98, 547 P.2d 295 (1976); *State v. Campbell,* 13 Wn. App. 722, 537 P.2d 1067 (1975).

Overdahl and Chrisman next assert that Officer Daugherty was required to knock and announce prior to his entry into the room. RCW 10.31.040 requires that police in carrying out searches or arrests must knock, announce and wait for refusal before making a forcible entry into a residence. *State v. Edwards,* 20 Wn. App. 648, 581 P.2d 154 (1978); *State v. Talley,* 14 Wn. App. 484, 543 P.2d 348 (1975). The purpose underlying the knock and announce rule is to prevent unnecessary violence, physical destruction of property and unreasonable intrusions into private residences. *State v. Hilliard,* 18 Wn. App. 614, 570 P.2d 160 (1977). However, strict compliance with the knock and announce rule will be excused "when to knock and announce would be to perform a useless act, . . . or allow the destruction of evidence." *State v. Campbell,* 15 Wn. App. 98, 101, 547 P.2d 295 (1976). Here, where the police officer was standing in an open doorway with the full knowledge of both occupants, strict compliance with the knock and announce rule would have been a useless act.

■ Finally, Overdahl and Chrisman argue that their consent to search was not validly given. We find no merit to this contention. After Officer Daugherty seized the pipe and marijuana seeds, he immediately advised Chrisman and Overdahl of their *Miranda* rights. Chrisman then gave the officer additional contraband after he had been advised of his rights. His act of giving the officer more drugs was a testimonial act which required his being advised of his rights. He was so advised and waived those rights. *Cf. State v. Dennis,* 16 Wn. App. 417, 558 P.2d 297 (1976). There is nothing in the record to suggest coercion. In fact, the officers called in a resident adviser as a witness in order to avoid just such an accusation. Overdahl and Chrisman conferred at some length about giving their consent to the search and signed written consent forms to that effect. Although written consent is not required, the forms are indicia of a voluntary consent. *See State v. Rodriguez,* 20 Wn. App. 876, 582 P.2d 904 (1978). We find both students validly and voluntarily consented to the search.

Judgment affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied December 4, 1979.

Review granted by Supreme Court February 15, 1980.