JUSTICE SOLOMON,
dissenting.
The majority’s decision is based upon the notion that the holdings in Washington v. Chrisman, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), and State v. Bruzzese, 94 N.J. 210, 463 A.2d 320 (1983), cert. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984), were “expressly contingent” on the defendants’ arrest prior to the officers following them inside their home. However, this distinction disregards the facts of both eases and the reasoning behind their respective findings. The Appellate Division’s *476 opinion, on the other hand, is consistent with Chrisman and Bruzzese. Therefore, I respectfully dissent.
The facts of Chrisman, as explained by the State of Washington’s trial and appellate courts, indicate that the defendant was detained, like defendant here, and was not placed under arrest until the drugs were found in his dorm room. On the evening of January 21, 1978, Officer Richard Daugherty of the Washington State University Police Department approached a university dormitory to investigate an unrelated matter. State v. Chrisman, 24 Wash.App. 385, 600 P.2d 1316, 1317 (1979). At the same time, Carl Overdahl, defendant Chrisman’s roommate, was leaving the same dormitory while carrying a half gallon of gin. Ibid. Believing Overdahl to be under the legal drinking age of 21, Officer Daugherty asked him for identification. Ibid. Overdahl explained that his identification was in his dorm room and asked Officer Daugherty to wait while he retrieved it. Ibid. The parties’ briefs to the Washington Supreme Court explain that “Officer Daugherty indicated to [] Overdahl that since [he] was under police detention, [Officer Daugherty] would not allow him to leave without an officer accompanying him to his room.” (emphasis added). Over-dahl did not object to the police escort. Chrisman, supra, 455 U.S. at 3, 102 S.Ct. at 815, 70 L.Ed.2d at 783. It was not until Officer Daugherty and Overdahl were waiting for the elevator that Over-dahl admitted to being nineteen years old. Chrisman, supra, 600 P.2d at 1317.
When they arrived at Overdahl’s room, Officer Daugherty first only leaned against the doorway. Ibid. At that point, the officer saw Neil Chrisman, who appeared “visibly nervous” when he noticed the officer. Ibid. Officer Daugherty also observed a tray holding marijuana seeds and a pipe he believed was used for smoking marijuana sitting on a desk. Ibid. The officer entered the room and obtained Overdahl’s and Chrisman’s consent to search. Ibid. The search yielded more drugs. Ibid.
It is important to highlight that the Washington Superior Court record does not reflect the moment when Overdahl was placed *477 under arrest. Notably, while Overdahl was ultimately charged with multiple drug offenses, he was neither charged with nor tried for the alcohol-related offense. Id. at 1318.
Most critically, the trial court’s Memorandum Opinion declined to find Overdahl’s original detention to be a formal arrest. In his motion to suppress before the trial court, Overdahl argued that the drugs should be suppressed because Officer Daugherty did not give him Miranda[2] warnings before asking for identification and following him to his room. The court noted that Officer Daugherty had “probable cause to make a formal arrest but instead” chose to “offer[ ] the defendant an opportunity to establish his innocence by proof of age.” The court found that Overdahl was not prejudiced by the lack of Miranda warnings because his identification would have revealed his true age and “[t]he alternative would have been his formal arrest and detention until he could be identified.” (emphasis added).
The underlying facts upon which the Court’s holding in Chris-man was made are fundamentally identical to the facts here. When defendant opened the door to the common porch area, the officer detected a strong odor of burnt marijuana. At that moment—based upon the scent emanating from the hallway where only two people were standing, including defendant—Officer Dill had probable cause to believe that a drug offense had been committed. This is established by our decision in State v. Walker, which the Appellate Division correctly highlighted, wherein we held that “the smell of marijuana itself constitutes probable cause that a criminal offense has been committed and that additional contraband might be present.” 213 N.J. 281, 290, 62 A.3d 897 (2013) (quoting State v. Nishina, 175 N.J. 502, 516-17, 816 A.2d 153 (2003)). Both in Chrisman and here, the officers had probable cause to arrest the individuals. While neither defendant was placed under arrest yet, the officers had the right, under the circumstances, to ask for identification. When defendant explained *478 that his identification was in his apartment—like in Chrisman, where the defendant’s identification was inside his dorm room— the officer reasonably decided to follow him inside.
In other words, as in Chrisman, where Officer Daugherty chose not to “formal[ly] arrest and det[ain]” Overdahl even though he was below the legal drinking age and was holding a half gallon of gin, the officer here did not stop, frisk, and “formalfly] arrest and det[ain]” defendant. Instead, the officer followed defendant to his apartment and ultimately discovered the firearm, just as Officer Daugherty accompanied Overdahl to his dorm room and discovered the drugs. Therefore, contrary to the majority’s assertion, Chrisman is factually on point with the case before us, and the Appellate Division should be affirmed.
Our decision in Walker, supra, refers to two cases that provide further support for Officer Dill’s conduct here, Nishina, supra, 175 N.J. 502, 816 A.2d 153, and State v. Vanderveer, 285 N.J.Super. 475, 667 A.2d 382 (App. Div. 1995). In Nishina, supra, an officer was conducting a routine patrol and became suspicious when he observed the defendant and three companions walking in a secluded area three hundred feet from an unoccupied school, late at night. 175 N.J. at 506-07, 816 A.2d 153. The officer asked the defendant for identification, including “driver’s license, registration, and insurance card,” to confirm who owned the ear parked across the street, and “to make sure that the ear ... wasn’t stolen.” Id. at 507, 816 A.2d 153 (omission in original). After receiving the requested materials, the officer “smelled a real strong odor of burnt marijuana coming from [the defendant’s] clothes.” Id. at 508, 816 A.2d 153. The officer subsequently patted down the defendant, discovered rolling papers, and saw a bag in the defendant’s vehicle that he suspected to contain marijuana. Ibid. The officer then searched the vehicle and found marijuana. Id. at 508-09, 816 A2d 153. This Court found that the officer “had probable cause to believe that [the] defendant possessed illegal narcotics once he detected an odor of marijuana on [the] defendant’s clothing.” Id. at 517, 816 A2d 153. Further, the bag, along *479 with the scent of marijuana and drug paraphernalia, provided probable cause to suspect that the vehicle contained illegal drugs, and, thus, a warrantless search inside was permissible. Id. at 517-19, 816 A2d 153.
Similarly, in Vanderveer, supra, the panel found that the war-rantless search of the defendant, who was alongside N.R.—the subject of an arrest warrant the officers were executing—was permissible after officers detected the odor of marijuana. 285 N.J.Super. at 481, 667 A.2d 382. While patting down the defendant, the officers found narcotics. Id. at 477, 667 A2d 382. The appellate panel concluded that “[w]hen no contraband was found on N.R., ... the officer’s attention naturally turned to [the] defendant. Probable cause existed that a criminal offense had been committed and that additional contraband might be present. [Thus,] Officer McDonald was permitted to search for contraband of the offense.” Id. at 479, 667 A. 2d 382.
Based on Nishina and Vanderveer, it is clear that the officer here had probable cause. As defendant was walking, Officer Dill observed a bulge in his sweatshirt. Because the officer did not know if the bulge was created by a weapon or by narcotics, he could have conducted an immediate search, but instead followed defendant to his apartment for identification. This decision, given the circumstances, does not invalidate the subsequent seizure of the weapon because “probable cause that a criminal offense ha[d] been committed and that additional contraband might be present” did not disappear. Walker, supra, 213 N.J. at 290, 62 A.3d 897. Rather, the officer decided to offer defendant an opportunity to retrieve his identification. As the trial court stated in Chrisman, “It is difficult to find criticism of police conduct where an officer has probable cause to make a formal arrest but instead of doing so offers the defendant an opportunity to establish his innocence by proof of age.” (emphasis added). That the individual must be placed under formal arrest first, as the majority holds, is an inappropriate limitation on Chrisman and a misunderstanding of the dangerous circumstances in which these situations arise.
*480 In addition, the facts and reasoning behind our holding in Bruzzese support the conclusion that Officer Dill’s conduct was reasonable. This Court found in Bruzzese that, despite using an arrest warrant as a pretext, the officers acted reasonably—consistent with the Fourth Amendment of the United States Constitution—in following the defendant to his bedroom and seizing evidence of an unrelated burglary. Bruzzese, supra, 94 N.J. at 216, 235, 463 A.2d 320.
The Court held that “once a defendant is placed under lawful arrest, the arresting officer has the right to remain at his side and to follow him wherever he chooses to go.” Id. at 232, 463 A2d 320. We reached this conclusion by balancing the interests of public safety—“the protection of policemen”—against the intrusion upon privacy and inconvenience to an individual. Ibid. This Court stressed how Chrisman’s focus on protecting the police was equally important in its decision. Id. at 231, 463 A.2d 320. The Court’s rationale for adopting Chrisman and finding that the officers acted reasonably given the circumstances applies in both post- and pre-arrest situations. Unfortunately, in balancing the interests of public safety against “the protection of policemen,” the majority has chosen to discount protection of the police officer here.
Whether the individual is arrested or detained, I find there to be an equally present need to protect the police from dangerous situations. As explained, Officer Dill had probable cause to believe that defendant was involved in criminal conduct. To let defendant retrieve his identification from his apartment without supervision would expose the officer to risks of a multitude of dangerous or deadly outcomes. As the Bruzzese Court acknowledged, “[t]he proliferation of handguns poses a constant danger to law enforcement officers. That danger requires that each patrolman should have the right to monitor the movements of an arrestee to guard against the possibility that he could secure a hidden weapon.” Id. at 233, 463 A.2d 320.1 fail to see how this danger is not present in *481 the situation before us today simply because defendant had been detained and not arrested before being escorted to his apartment.
As in Chrisman, Officer Dill reasonably suspected criminality was afoot, so he detained defendant and allowed him to retrieve identification with supervision. The majority hints that Officer Dill should have conducted a pat-down of defendant the moment he was introduced to the suspicious scenario. While this may be true in hindsight, an officer should not be so analyzed given his need to make instantaneous decisions.
This is particularly true where, as here, his ultimate decision was a reasonable one. “There are numerous situations that arise in law enforcement that are unique and call for a special response.” Id. at 228, 463 A2d 320. Even the Bruzzese holding made clear that a search will not be found unreasonable per se just because “the police officer deviates from standard operating procedure.” Ibid. Instead, Bruzzese “adopt[ed] the rule that a deviation from standard police practice should be examined on its merits to determine whether it constitutes an unreasonable act.” Ibid. Indeed, in Bruzzese, where the officer’s tactics were manipulative and coy, the Court focused on the objective reasonableness of his conduct under the circumstances. Id. at 227-39, 463 A 2d 320. Officer Dill’s conduct was reasonable under Bruzzese, was not questioned by the trial court, and is consistent with Chrisman.
My position is perfectly summarized by the Appellate Division as follows:
Federal Courts of Appeals have recognized that “[a]lthough the Supreme Court [in Chrisman] refers to the student as having already been placed under arrest when the officer accompanied him back to his dorm room to retrieve identification, we do not think that this characterization makes Chrisman any less applicable” to a pre-arrest situation.
[State v. Legette, 441 N.J.Super. 1, 19, 116 A.3d 32 (App. Div. 2015) (alterations in original) (quoting United States v. Roberts, 612 F.3d 306, 310 n.4 (5th Cir.), cert. denied, 562 U.S. 1116, 131 S.CT. 839, 178 L.Ed.2d 570 (2010)).]
Our jurisprudence warrants a similar conclusion in this ease. I would affirm the judgment of the Appellate Division.

 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).